IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary H. Powell,                           :
                        Petitioner        :
                                          :
        v.                                :
                                          :
Unemployment Compensation                 :
Board of Review,                          :
                        Respondent        :        No. 1704 C.D. 2014

# **O R D E R**

NOW, November 6, 2015, having considered respondent's application for reargument and petitioner's response in opposition thereto, the application is denied to the extent it seeks reargument, but reconsideration is granted. The opinion filed September 17, 2015 is withdrawn. The attached opinion is entered.

BY THE COURT:

_____
DAN PELLEGRINI,
President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gary H. Powell,                                  :
                    Petitioner                   :
                                                 :
          v.                                     :    No. 1704 C.D. 2014
                                                 :    Submitted:  March 20, 2015
Unemployment Compensation                        :
Board of Review,                                 :
                    Respondent                   :


BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE P. KEVIN BROBSON, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION BY JUDGE BROBSON**                          **FILED:  November 6, 2015**


          Gary H. Powell (Claimant) petitions, *pro se*, for review of an order of
the Unemployment Compensation Board of Review (Board), which affirmed an
Unemployment Compensation Referee's (Referee) decision denying Claimant
unemployment compensation benefits under Section 402(b) of the Unemployment
Compensation Law (Law).[1]   For the reasons set forth below, we vacate and
remand.

---

          [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§ 802(b). Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for
compensation for any week in which the claimant's unemployment is due to voluntarily leaving
work without cause of a necessitous and compelling nature.  "[W]hether a claimant had cause of
a necessitous and compelling nature for leaving work is a question of law subject to this Court's
review." *Wasko v. Unemployment Comp. Bd. of Review*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985).

Claimant applied for unemployment compensation benefits after he voluntarily resigned his position as a laborer and maintenance man with Joe Krentzman & Son Inc. (Employer)[2] on September 24, 2013. The Altoona UC Service Center (Service Center) found that Claimant was ineligible for benefits under Section 402(b) of the Law, pertaining to voluntary termination without cause of a necessitous and compelling nature. Claimant appealed, claiming that he had necessitous and compelling cause to quit, because Michael Krentzman, President of the company, forcibly assaulted him.

Referee Brian Parr conducted a hearing on December 5, 2013. (Certified Record (C.R.), Item Nos. 7, 12.) Claimant introduced Don Bailey as his representative for the hearing. Mr. Bailey, from the beginning, admitted to being suspended from practicing law in this Commonwealth for five years by the Pennsylvania Supreme Court, but he stated that he was present at the hearing as an advocate working pro bono. Neither Referee Parr nor Employer objected to Mr. Bailey representing Claimant.

Mr. Bailey first presented Referee Parr with an issue concerning subpoenas. He alleged that, on December 2, 2013, Claimant submitted requests for six witnesses to be subpoenaed for the hearing but the subpoenas were not delivered to him until December 4th, one day before the hearing. Referee Parr agreed that the timeframe was short and offered to continue the hearing to a later date, if needed.

---

[2] Employer filed an application to intervene in this matter, which the Court granted by order dated November 20, 2014.

Dale Watkins, Chief Financial Officer and Corporate Secretary for Employer, testified that he instructed security personnel on September 24, 2013, that if Claimant appeared on the premises after work hours not to admit him and to instruct him that he was to report during regular work hours. At this point in the hearing, Referee Parr decided that there was a factual issue to the testimony that required witnesses to be subpoenaed. The parties discussed the relevance behind the subpoenas, and the Referee continued the hearing for a later date.

On December 9, 2013, Schaun D. Henry, Esquire, entered his appearance as attorney for Employer. (C.R., Item No. 13.) In his letter entering his appearance, Mr. Henry argued that Mr. Bailey improperly represented Claimant at the December 5th hearing, because Rule 217(j)(4)(vii) of the Pennsylvania Rules of Disciplinary Enforcement (Disciplinary Rules) prohibit the representation. The relevant part provides that "a formerly admitted attorney is specifically prohibited from . . . appearing on behalf of a client in any hearing or proceeding before any judicial officer, arbitrator, mediator, court, public agency, *referee*, magistrate, hearing officer or any other adjudicative person or body." Pa. R.D.E. 217(j)(4)(vii) (emphasis added). Rule 102(a) of the Disciplinary Rules, Pa. R.D.E. 102(a), defines a "formerly admitted attorney" as a "disbarred, *suspended*, *administratively suspended*, retired or inactive attorney." (Emphasis added.) Mr. Henry objected to any evidence presented at the December 5th hearing on the basis that Mr. Bailey was prohibited from appearing before Referee Parr to represent Claimant, and he further argued that some of the subpoena requests were irrelevant.

A second hearing was scheduled for January 8, 2014, but it was subsequently continued. (C.R., Item Nos. 15, 18.) By letter dated February 6, 2014, Referee Susan Hess informed Mr. Bailey that Rule 217 of the

3

Disciplinary Rules prohibits a suspended attorney from appearing on behalf of a client in any hearing or proceeding before a referee, and thus, he cannot represent Claimant. (C.R., Item No. 22.) Referee Hess informed Claimant that he had thirty days to retain another lawyer.

On March 26, 2014, Referee Hess conducted a second hearing. (C.R., Item Nos. 24, 30.) In advance of the hearing, Employer sent a subpoena to the Pennsylvania State Police for an incident report, and Claimant sent a subpoena to David Parks, seeking to have him testify at the hearing. (C.R., Item Nos. 25, 27, 29.) At the hearing, Claimant introduced Andy Ostrowski as his advocate. After some questioning, Referee Hess determined that Mr. Ostrowski's attorney's license was suspended. Referee Hess refused to allow Mr. Ostrowski to represent Claimant, but she allowed him to sit through the proceeding as an observer. Claimant continued the hearing *pro se*. Referee Hess admitted the statements made at the first hearing as part of the second hearing.

Referee Hess essentially found Claimant's story that Michael Krentzman, the president of the company, forcibly put his hand on Claimant's chest was not credible. Thus, Claimant failed to establish a necessitous and compelling reason for leaving work. As such, Referee Hess denied Claimant unemployment compensation benefits.

Claimant appealed to the Board, and the Board affirmed the Referee's order. The Board made the following findings of fact:

1. For the purposes of this appeal, the claimant was last employed by Joe Krentzman & Sons, Inc., from September 1, 1995, until September 24, 2013, at an hourly rate of $12.60.

2. The claimant's final position was full-time laborer and maintenance person.

4

3. The claimant had previously acted as temporary non-ferrous department foreman.

4. On September 24, 2013, the company president directed the claimant to temporarily replace the non-ferrous department foreman, who left work that day due to a health issue.

5. The president described the claimant's foreman duties, which included overseeing the repair of a machine.

6. The president asked if he could count on the claimant because the machine repair was a serious issue and he needed someone to take charge of the repair and the eight non-ferrous department employees.

7. The claimant responded that he was the only person that the president could count on, and when the president said that he could not count on the claimant at times due to his poor performance, the claimant told the president that he did not work for him, he only worked for the president's father.

8. The claimant also told the president that he did not have to listen to the president's brother, who is the chief financial officer, he only worked for the president's father, who owned the company, and he wanted to speak with the president's father immediately.

9. When the claimant started walking toward the main office, the president said that they could both speak with the president's father on the claimant's break at 10:00 a.m.

10. The claimant turned back toward the main warehouse area, claimed that the president assaulted him, and asked nearby employees for a cell phone so that he could call 9-1-1.

11. The president did not touch the claimant and, specifically, did not put a hand on the claimant's chest to block him from leaving.

12. At some point during this interaction with the president, the claimant said that he needed to travel

to Lewistown Paper for supplies, and the president said that he would run the errand over lunch because he needed the claimant to be on duty in the non-ferrous department.

13. When none of the employees would give the claimant access to a cell phone, at 9:14 a.m., the claimant walked out without punching out, walked across the street to his car in the parking lot, and drove away.

14. The claimant subsequently reported the incident to the Pennsylvania State Police, and a trooper responded to the employer's warehouse to follow up on the complaint, but no charges were filed against the employer.

15. The claimant did not report to work on September 25, 2013, or thereafter, and did not contact the president or his immediate supervisor, the company's chief financial officer who was also in charge of human resources issues.

16. The chief financial officer informed the employer's security personnel that the claimant was not permitted to enter the workplace after hours; this rule applied to all former employees.

17. The employer's management never instructed security or informed the claimant that he was not permitted to return to the workplace during working hours.

(C.R., Item No. 36.) The Board also explained that Referee Hess properly prohibited the suspended attorneys from representing Claimant in the proceeding before her and noted that Claimant was given proper notice of the change of representation and sufficient time to retain different counsel. The Board also resolved the conflicts in testimony in favor of Employer, placing weight on Employer's witnesses' credible first-hand testimony and Claimant's lack of attempts to contact Employer after the altercation. Finding that Claimant did not demonstrate credibility and offered no support to show a hostile work

6

environment, the Board determined that Claimant failed to establish necessitous and compelling cause for voluntarily quitting his employment. Claimant petitioned the Board for reconsideration of its decision, which the Board denied. (C.R., Item Nos. 37, 39.) Claimant now petitions this Court for review.

On appeal,[3] Claimant essentially makes the following arguments: (1) the Board erred in applying the Disciplinary Rules to prohibit the suspended attorneys from representing him at the hearings; (2) the Board violated Claimant's due process rights by improperly prohibiting Mr. Bailey and Mr. Ostrowski from representing Claimant; (3) the Board's factual finding that the president did not put a hand on Claimant's chest to block him from leaving is not supported by substantial evidence; and (4) the Board erred as a matter of law in concluding that Claimant did not have a necessitous and compelling cause to quit his job.

First, we address Claimant's argument that the Board erred in applying the Disciplinary Rules to prohibit the suspended attorneys from representing him at the hearings. Claimant asserts that Section 214 of the Law,[4] as confirmed by our Supreme Court's decision in *Harkness v. Unemployment Compensation Board of Review,* 920 A.2d 162 (Pa. 2007), permits non-attorney representatives to represent individuals during a referee hearing, and Mr. Bailey and Mr. Ostrowski were acting as representatives, not as attorneys, for his hearings. Thus, Claimant contends that the Board erred in precluding the

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] Added by the Act of June 15, 2005, P.L. 8, 43 P.S. § 774.

suspended attorneys from representing him. The Board argues that notwithstanding Section 214 of the Law, Mr. Bailey and Mr. Ostrowski were prohibited pursuant to the Disciplinary Rules. The Board argues that Mr. Bailey and Mr. Ostrowski are not the standard "non-attorneys" to which the case law applies. (Respondent's Br. at p. 9.) The Board emphasizes that Mr. Bailey and Mr. Ostrowski are *suspended attorneys*, not non-attorneys. (*Id.*)

Rule 201(a) of the Disciplinary Rules provides that the Supreme Court and the Disciplinary Board of the Supreme Court (Disciplinary Board) have exclusive disciplinary jurisdiction over "[a]ny attorney admitted to practice law in this Commonwealth," "[a]ny formerly admitted attorney . . . with respect to acts subsequent thereto which amount to the practice of law or constitute the violation of the Disciplinary Rules, these rules or rules of the [Disciplinary] Board adopted pursuant hereto," and "[a]ny attorney not admitted in this Commonwealth who practices law or renders or offers to render any legal services in this Commonwealth." Pa. R.D.E. 201(a). Disciplinary Rule 217(d)(1) provides, in part, that "[t]he formerly admitted attorney, after entry of the disbarment, suspension, administrative suspension or transfer to inactive status order, shall not . . . *engage as attorney for another in any new case or legal matter of any nature.*" Pa. R.D.E. 217(d)(1) (emphasis added). Furthermore, pursuant to Disciplinary Rule 217(j)(4), a formerly admitted attorney is specifically *prohibited* from "representing himself or herself as a lawyer or person of similar status," "rendering legal consultation or advice to a client," and "*appearing on behalf of a client in any hearing or proceeding or before* any judicial officer, arbitrator, mediator, court, public agency, *referee*, magistrate, hearing officer or any other adjudicative person or body." Pa. R.D.E. 217(j)(4) (emphasis added). Disciplinary Rule 102(a)

8

defines a "formerly admitted attorney" as "[a] disbarred, *suspended, administratively suspended*, retired or inactive attorney." Pa. R.D.E. 102(a) (emphasis added).

Section 214 of the Unemployment Compensation Law, however, provides that "[a]ny party in any proceeding under this act before the department, a referee or the board *may be represented by an attorney or other representative*." (Emphasis added.) Moreover, our Supreme Court in *Harkness* held that non-attorneys may represent an individual before a referee hearing, because such activity does not constitute the practice of law. *See Harkness*, 920 A.2d at 169.

In *Harkness,* the Supreme Court reasoned that a *non-attorney or lay representative* can represent individuals at a referee hearing because (1) an unemployment compensation proceeding is largely routine and primarily focused on creating a factual basis, or record, by which the referee can render a decision and (2) the nature of the proceeding is remedial and the purpose is to provide economic security to unemployed individuals who are unemployed through no fault of their own, thus the proceedings are "by design, brief and informal." *Id.* at 166, 168. Thus, the Supreme Court concluded that a *non-attorney* representing a party before a referee hearing is *not engaging in the practice of law.*[5] *Id.* at 169. It

---

[5] In *Harkness*, the claimant was discharged from her employment for using vulgar language towards a customer. *Harkness*, 920 A.2d at 164. At the referee hearing, the employer was represented by an employee of a tax company. *Id.* The employer's representative was *not an attorney*. *Id.* After being found ineligible for benefits by the referee, the claimant appealed to the Board. *Id*. at 165. The Board affirmed, noting that the Law permits parties to be represented by legal or non-legal advisors. *Id.* Upon appeal, this Court reversed the Board's decision, concluding that it was error for the referee to permit the employer to be represented by a non-attorney. *Id*. The employer appealed to the Supreme Court, which reversed this Court's order. *Id.* at 171.

9

is important to note here that the main issue behind *Harkness* was whether individuals representing claimants in unemployment compensation proceedings were illegally engaging in the practice of law. The Supreme Court concluded they were not. *Id.* at 166.

Here, we are not confronted with the question of whether representing a party before an unemployment compensation referee constitutes the practice of law, but rather, we are presented with the question of whether the Board acted properly when it prohibited the suspended attorneys from representing Claimant at the hearing. Pursuant to Section 214 of the Law, Claimant had a statutory right to be represented by his designee at an unemployment compensation hearing. Our Supreme Court has held that the representative need not be an attorney, because representation before an unemployment referee does not constitute the practice of law. *See Harkness*. Under Section 214 of the Law, then, Claimant was entitled to designate the suspended attorneys as his representative.

Rather than applying Section 214 of the Law and the Supreme Court's decision in *Harkness* interpreting it, the Board applied a Disciplinary Rule. Enforcement of the Disciplinary Rules, however, falls within the "exclusive" jurisdiction of the Supreme Court and the Disciplinary Board. Pa. R.D.E. 201(a). We note at least one instance where the Pennsylvania Supreme Court, responding to a petition of the Disciplinary Board, held a suspended attorney in contempt for willful violation of Disciplinary Rule 217(j) by representing claimants and employers in unemployment compensation matters before the Board. *In the Matter of David Louis Bargeron*, 130 DB 2005 (Pa. July 27, 2011) (*Bargeron*).

The question in this case, however, is not whether the suspended attorneys—Mr. Bailey and Mr. Ostrowski—should be sanctioned as a matter of

10

discipline by the Pennsylvania Supreme Court for violating Disciplinary Rule 217(j). The question is whether the Board or referee may enforce Disciplinary Rule 217(j) to deprive a claimant of his right to representation of his choice under Section 214 of the Law, which does not preclude a "suspended attorney" from serving as a claimant representative. We hold that they cannot. As noted above, the jurisdiction of the Disciplinary Board and the Supreme Court to prosecute and enforce the Disciplinary Rules is "exclusive." Pa. R.D.E. 201(a). As *Bargeron* illustrates, both have taken steps to discipline lawyers who violate Rule 217(j) by representing clients in unemployment compensation matters. Here, the Board ignored its own governing statute and attempted to step into the shoes of the Disciplinary Board and the Supreme Court, effectively sanctioning Claimant for Mr. Ostrowski's violation of the Disciplinary Rules by denying Claimant representation at the second hearing.[6]

Should this situation arise again, it would be more appropriate, and consistent with both Disciplinary Rule 217(j) and Section 214 of the Law, for the referee and the Board to advise the suspended attorney that the suspended attorney's representation of the claimant would be a violation of Disciplinary Rule 217(j). If the suspended attorney chooses, nonetheless, to continue the representation, the referee and Board must allow it under Section 214 of the Law, but they may refer the suspended attorney to the Disciplinary Board for further

---

[6] Referee Parr permitted Mr. Bailey to represent Claimant at the first hearing, because Employer did not object to the representation until after the first hearing and before the second hearing. Referee Hess admitted the statements made at the first hearing as part of the second hearing. Thus, Claimant received the benefit of Mr. Bailey's representation at the first hearing, but he was denied Mr. Bailey's and Mr. Ostrowski's representation thereafter.

11

action consistent with *Bargeron*. If the suspended attorney chooses to withdraw, then the referee and the Board should afford the claimant an opportunity to find alternative representation.

Accordingly, the order of the Board is vacated, and the matter is remanded to the Board for a new hearing.

_____
P. KEVIN BROBSON, Judge


Judge McGinley dissents.

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Gary H. Powell, : 
                Petitioner : 
                        : 
        v. :   No. 1704 C.D. 2014
                        : 
Unemployment Compensation : 
Board of Review, : 
             Respondent : 

## O R D E R

AND NOW, this 17th day of September, 2015, the order of the Unemployment Compensation Board of Review (Board) is hereby VACATED, and the matter is REMANDED to the Board in accordance with this opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge